UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DANIEL McTIMMONDS,<br><br>        Plaintiff,<br><br>   v.<br><br>ALCOHOL & DRUG TESTING SERVICES, LLC, and DOES 1 through 20 Inclusive,<br><br>        Defendants. | CIV. NO. 2:14-2124 WBS KJN<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS</u> |

----oo0oo----

        Plaintiff brought this diversity action against defendant Alcohol and Drug Testing Services, LLC ("ADTS") to recover for emotional distress he suffered as a result of defendant's alleged tortious acts during a random alcohol drug screening procedure.  Defendant now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

I.   <u>Factual and Procedural Background</u>

1

The Union Pacific Railroad ("Union Pacific") contracts with defendant to conduct drug testing of Union Pacific employees. (Compl. ¶ 6.) Plaintiff is an employee at Union Pacific, and on July 17, 2013, he presented himself for a routine, random drug and alcohol screening procedure required by the United States Department of Transportation. (Id.); see Federal Railroad Safety Act, 49 U.S.C. § 20140 (mandating that the Secretary of Transportation promulgate regulations establishing preemployment, reasonable suspicion, random and post-accident drug testing programs for railroad employees); 49 C.F.R. pt. 40 (Department of Transportation regulations pursuant to § 20140).

Plaintiff alleges that when he entered the site, an ADTS technician shouted his last name and instructed plaintiff to take a seat and sign an Alcohol Test form. The technician administered a breathalyzer test to check plaintiff's blood alcohol content ("BAC"). When the result appeared, indicating a BAC of .05%, plaintiff alleges the technician "very loudly and publicly" asked plaintiff, "Have you been drinking this morning?" (Id. ¶¶ 8, 13.) "[N]o fewer than six other people" were present, all within a six-foot radius or "earshot" of plaintiff. (Id.) Plaintiff, allegedly shocked and humiliated, replied that he had not been drinking. (Id. ¶ 9.) The technician, waiving the breathalyzer back and forth, responded, "Well, this says you have been!" (Id. ¶ 10.) Plaintiff asked the technician to lower her voice because the information was private and many of plaintiff's co-workers were nearby. (Id. ¶ 11.) Waiving her hands in the air, the technician stated in a loud voice, "I have been asking

2

Buck (a UPRR employee) for a private room for the last two years--Redding and Dunsmuir [sic] and I never got it!" (Id. ¶ 14.) The technician then questioned whether the machine was working properly and made a call on her cell phone. (Id. ¶¶ 14-16.)

When the call ended, plaintiff told the technician, "This isn't right," and stated he was going to call his supervisor. (Id. ¶¶ 15-16.) He picked up his testing form and proceeded toward the door. (Id.) According to plaintiff, the technician confronted him, saying, "You can't take that!" (Id. ¶ 17.) The technician attempted to physically wrest the form out of plaintiff's hands while plaintiff simultaneously pulled away and said, "Don't touch me!" (Id.) Plaintiff walked around the technician as she continued to instruct plaintiff to stay at the site. Before plaintiff could manage to leave, he was stopped by a supervisor who had allegedly overheard the conversation with the technician from his office adjacent to the testing site. (Id. ¶ 19.)

Soon after, plaintiff's direct supervisor arrived. (Id. ¶ 20.) During this time, the technician was talking on her cell phone to an unknown party, allegedly "sharing information about the testing procedure involving [p]laintiff and clearly disclosing information regarding [p]laintiff's response and objections to the testing procedures and conditions." (Id.)

Plaintiff's direct supervisor recommended the technician re-test plaintiff's BAC. (Id. ¶ 21.) The technician repeated the breathalyzer inside an office with the door open while "plaintiff's co-workers were entering and exiting the building." (Id. ¶ 22.) The test was once again positive for

1  alcohol.  (Id. ¶ 24.)  Plaintiff then performed a confirmation
2  test, and was next instructed by the technician to produce a
3  سample for a urinalysis.  (Id. ¶ 26.)  After roughly one-and-a-
4  half hours, plaintiff produced a specimen.  (Id.)  During the
5  one-and-a-half hour window, plaintiff overheard the technician
6  ask someone on her cell phone, "Am I going to get fired for
7  this?"  (Id. ¶ 27.)  Plaintiff's allegations end there, without
8  any reference to discipline or adverse employment actions that
9  resulted from his positive breathalyzers or the result of his
10 urinalysis.

11          Plaintiff brings four state law tort claims to recover
12 for emotional distress he allegedly suffered as a result of the
13 technician's conduct and the public nature of the testing
14 environment: (1) invasion of privacy; (2) intentional infliction
15 of emotional distress; (3) negligence; and (4) negligent
16 infliction of emotional distress.  Defendant now moves to dismiss
17 under Rule 12(b)(6), arguing the Department of Transportation
18 safety regulations preempt plaintiff's claims, and, in any case,
19 plaintiff's Complaint does not contain sufficient allegations to
20 support his claims.
21 II.  Analysis

22          On a Rule 12(b)(6) motion to dismiss, the court must
23 accept the allegations in the complaint as true and draw all
24 reasonable inferences in favor of the plaintiff.  See Scheuer v.
25 Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by
26 Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S.
27 319, 322 (1972).  To survive a motion to dismiss, a plaintiff
28 must plead "only enough facts to state a claim to relief that is

plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a plaintiff pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

### A. Invasion of Privacy

Plaintiff did not specify in his Complaint which of the privacy torts he asserts against defendant, but his allegations employ the elements of a public disclosure of private facts claim, (see Compl. ¶¶ 29-34), and at oral argument plaintiff's counsel confirmed unequivocally that this is plaintiff's claim. The elements of this claim are: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern."  Shulman v. Grp. W Prods., Inc., 18 Cal. 4th 200, 214 (1998).  Plaintiff alleges the ADTS technician publicly disclosed the results of [his] breathalyzer test to approximately six others who were present at the testing site and that his positive result was extremely private in nature and not a matter of public concern.  (Compl. ¶¶ 28-32.)  As a result, plaintiff alleges he "suffered mental anguish, humiliation, discomfort, worry, anxiety, annoyance, and severe emotional distress."  (Id. ¶ 33.)

Plaintiff has made no attempt to identify a privacy interest in his positive breathalyzer results such that they would constitute "private facts."  See Moreno v. Hanford Sentinel, Inc., 172 Cal. App. 4th 1125, 1130 (5th Dist. 2009)

5

(recognizing that one must have a reasonable expectation of privacy in a fact for it to be private).  Even if plaintiff could assert he had a privacy interest in his test results, that interest would be outweighed by the FRA's stated purpose for its comprehensive drug and alcohol testing regulations, "to prevent accidents and casualties in railroad operations that result from impairment of employees by alcohol or drugs."  49 C.F.R. § 219.1(a); see Smith v. Fesno Irrigation Dist., 72 Cal. App. 4th 147, 162 (holding that the plaintiff's privacy interest in the drugs he ingested was outweighed by the district's legitimate and substantial safety-related reasons for randomly drug testing its construction and maintenance workers).  Plaintiff thus fails to allege an essential element of a public disclosure claim of private facts claim.

Additionally, plaintiff has not adequately alleged a public disclosure.  "[E]xcept in cases involving physical intrusion, the [public disclosure] tort must be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few."  Schwartz v. Thiele, 242 Cal. App. 2d 799, 805 (1966) (citing Prosser on Torts 835 (3d ed.)).  Six co-workers in the waiting room of the testing site do not amount to the "public in general" or a "large number of persons."  See Tarlson v. United States, Civ. No. 13-3535, 2014 WL 605489, at *4 (N.D. Cal. Feb. 13, 2014) (holding that "[plaintiff's] claim does not meet the 'mass exposure' standard set out in California, because all those who were aware of Plaintiff's discharge were all professionally connected in the Coast Guard" and thus it was

not plausible that Foster's statements were "communicated to the general public or a diverse group of people completely unconnected"). The California Court of Appeal has held that as few as twenty persons sufficed as "mass exposure." See Kinsey v. Macur, 107 Cal. App. 3d 265, 272 (1st Dist. 1980). Kinsey is distinguishable, however, because those people were a "diverse group of people living in several states and totally unconnected either socially or professionally." Here the technician made the alleged disclosure to a non-diverse group of plaintiff's coworkers. Because such disclosure is not "publicity," plaintiff fails to allege a plausible claim for public disclosure of private facts, and the court must grant defendant's motion to dismiss that claim.

### B. Intentional Infliction of Emotional Distress

The elements of an intentional infliction of emotional distress claim are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) actual and proximate causation. Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009). "The California Supreme Court has set a 'high bar' for what can constitute severe distress." Wong v. Tai Jing, 189 Cal. App. 4th 1354, 1376 (6th Dist. 2010). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." Hughes, 46 Cal. 4th at 1051 (holding that a plaintiff's "discomfort, worry, anxiety, upset stomach, concern, and agitation" did not rise to this level) (internal

quotation marks and citation omitted).  A "highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry" is not "severe" if it is "trivial or transient."  See Wong, 189 Cal. App. 4th at 1376.

Plaintiff alleges that as a result of the technician's comments he suffered "anguish, humiliation, discomfort, worry, anxiety, annoyance, and severe emotional distress."  (Compl. ¶ 43.)  The Complaint is silent, however, as to whether the distress was enduring.  Under Iqbal, the conclusory allegation that plaintiff suffered severe emotional distress is insufficient.  Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")  Courts have repeatedly found similar allegations insufficient to state a cognizable IIED claim.  See. e.g., Lawler v. Montblanc N. Am. LLC, 704 F.3d 1235, 1246 (9th Cir. 2013) (holding that plaintiff's emotional injuries such as anxiety, sleeplessness, upset stomach, and muscle twitches "clearly" did not rise to the level of "severe"); Connolly v. Remkes, Civ. No. 5:14-1344 LHK, 2014 WL 5473144, at *14 (N.D. Cal. Oct. 28, 2014) (dismissing IIED claim where the plaintiff merely alleged "great worry and concern" without providing any facts of extreme emotional distress she may have suffered because "California courts have held that such allegations fail to establish the degree of harm necessary for a claim of intentional infliction of emotional distress"); San Joaquin Deputy Sheriff's Ass'n v. County of San Joaquin, 898 F. Supp. 2d 1177, 1192 (E.D. Cal. 2012) (Karlton, J.) (granting

defendant's motion to dismiss where plaintiff's allegations of severe emotional distress were conclusory). Therefore, because plaintiff fails to sufficiently allege severe emotional distress rising to the "high bar" set by the California Supreme Court, the court must grant defendant's motion to dismiss.[1]

### C. Negligence and Negligent Infliction of Emotional Distress

Plaintiff pleads claims for negligence and negligent infliction of emotional distress separately. "A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." Wong, 189 Cal. App. 4th at 1377.[2] Plaintiff's negligence and NIED claims both allege that plaintiff suffered emotional distress as a result of defendant's negligence. Because plaintiff's allegations supporting his negligence claim are identical to his allegations supporting his NIED claim, the court will address those claims together.

The only damages plaintiff alleges are emotional distress, not injury to his person. (Compl. ¶ 38.) In California, "'damages for negligently inflicted emotional

---

[1] Because the court finds that plaintiff's failure to plead "severe emotional distress" is a sufficient ground for dismissal, the court need not address whether plaintiff plausibly alleges that the technician's behavior was "outrageous."

[2] This court has previously acknowledged that where a plaintiff alleges an NIED claim based on damages suffered by bystander to an accident caused by a defendant's negligence, the claim requires proving different elements. See Roberts v. Orange Glo, Civ. No. 2:14-421 WBS DAD, 2014 WL 5780961, at *4 (Nov. 5, 2014). However, here plaintiff's NIED claim is that ADTS breached a duty to him and caused him emotional distress as a result, which is exactly what his negligence claim alleges.

9

1  distress may be recovered in the absence of physical injury or
2  impact . . . .'" Potter v. Firestone Tire & Rubber Co., 6 Cal.
3  4th 965, 986 (1993) (quoting Burgess v. Superior Court, 2 Cal.
4  4th 1064, 1074 (1992)).  However,

> unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of a duty.  Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.

Potter, 6 Cal. 4th at 985.  Furthermore, "to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.'" Wong, 189 Cal. App. 4th at 1377.  "Serious emotional distress" required for an NIED claim absent threat of physical harm is "functionally the same as" the articulation of "severe emotional distress' required for an IIED claim.  Id.

Here, plaintiff does not allege that defendant's conduct threatened physical injury.  He only alleges that, by failing to use certain accepted protocols to ensure the site was private, plaintiff suffered emotional distress.  (Compl. ¶¶ 37-39.)  Without any accompanying injury, plaintiff would have to allege that his emotional distress was "severe" to state a plausible NIED or negligence claim.  See Wong, 189 Cal. App. 4th at 1377.  Because, as previously discussed, the Complaint fails to allege "severe emotional distress," those claims both fail.

1  Accordingly, the court must grant defendant's motion to dismiss
2  plaintiff's NIED and negligence claims.
3          IT IS THEREFORE ORDERED that defendant's motion to
4  dismiss be, and the same hereby is, GRANTED.
5          Plaintiff has twenty days from the date this Order is
6  signed to file an amended complaint, if he can do so consistently
7  with this Order.
8  Dated:  December 2, 2014

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE